Bernard L. ALPERT, Regional Director of the First Region of the National Labor Relations Board, Petitioner

v.

LOCAL 1066, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, and its Agents Edward Dalton and Paul Callinan, Respondents.

Civ. A. No. 61–586.

United States District Court
D. Massachusetts.
Aug. 31, 1961.

Stanley A. Mestel, Washington, D. C., for plaintiff.

Joseph T. Doyle, Boston, Mass., for defendants.

CAFFREY, District Judge.

This matter was heard upon a verified petition, filed pursuant to 29 U.S.C.A. § 160(*l*), for a temporary injunction, pending final disposition of the matters involved herein pending before the National Labor Relations Board and upon an order to show cause and respondents' answer to the petition. Witnesses were called by both parties and at the conclusion of petitioner's case the respondents filed a motion to dismiss upon which judgment was reserved at the time of filing.

1. The petitioner is Regional Director of the First Region of the National Labor Relations Board and has filed this petition for and on behalf of the Board.

2. On July 5, 1961, Wiggin Terminals, Inc. (Wiggin) filed an amended charge with the Board alleging that Local 1066, a labor organization, and its agents, Edward Dalton and Paul Callinan, have engaged in and are engaging in unfair labor practices within the meaning of Section 8(b) (4) (i), subparagraph (B), of the National Labor Relations Act.

3. This charge was referred to the petitioner as Regional Director of the First Region of the National Labor Relations Board.

4. Local 1066 is an unincorporated association in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, etc.

5. At all times material Dalton has been Business Agent and Callinan has been a member of and agent for Local 1066.

6. Local 1066 maintains a principal office in Boston, Massachusetts, and at all times material has been engaged in this District in transacting business and in promoting and protecting the interests of its members.

7. Wiggins is a Massachusetts corporation which operates a marine terminal at the Port of Boston and receives revenues annually in excess of $50,000 for storage of goods and materials being shipped in commerce.

8. Bay State Stevedoring Co. is a wholly-owned subsidiary of Furness Withey Co. and provides stevedoring services at the port of Boston. These services include the loading and unloading of vessels, and the delivery and receiving of cargoes. This income from these services rendered in connection with interstate commerce exceed $50,000 annually.

9. Renault Distributors Corporation is a Massachusetts corporation which receives from overseas and ships to places within and without the Commonwealth of Massachusetts automobiles valued at over $50,000 annually.

10. Evidence was submitted at the hearing which establishes reasonable grounds to believe that for some time prior to June 1, 1961, Renault had used the following practice with reference to

the receipt and distribution of Renault cars in this country: upon arrival of a freighter at Boston, the automobiles would be unloaded on to the dock by the stevedoring company and placed at what was called in the trade a "point of rest." Thereafter, under a contract with a company referred to as University-Overland, Renault would cause trailer trucks specially equipped for the transportation of automobiles to remove the automobiles from the point of rest in lots of 5, 6, or 7 cars per trailer truckload to a storage area 18 or 20 miles distant from the point of rest located in the Town of Hingham, Massachusetts. At this point some servicing would be done to the cars and thereafter they would be delivered by trailer truck to the various Renault dealers in New England, who in turn would sell them to the ultimate purchasers.

11. Pursuant to an agreement entered into prior to July 1, 1961, Wiggin entered into an oral arrangement with Renault under which Renault was to lease an area on Castle Island located about one-quarter of a mile from the so-called point of rest. It was Renault's plan to cause the vehicles to be driven by employees of Bay State (who were and are members of Local 926, Lumberhandlers' Union) from the point of rest to this newly leased area where the cars would be serviced by employees of Renault and then delivered directly to Renault dealers.

12. Petitioner has reasonable cause to believe that under the "old procedure," involving use of University-Overland trailer trucks, it took several days to clear all the automobiles from the point of rest, with the result that clerk members of Local 1066 received a full day's pay for each day that any portion of the cargo of automobiles remained at the point of rest.

13. Petitioner has reasonable cause to believe that under the so-called "new procedure," all of the automobiles could be driven from the point of rest to the newly leased area one-quarter mile away in one or two days, thereby reducing the number of days' pay which would be received by clerk members of Local 1066.

14. There was testimony on the basis of which the petitioner has reasonable cause to believe that the officers and members of Local 1066 disapproved of the adoption of this new procedure and acted in a manner calculated to discourage its use. There was testimony that respondent Dalton told Mr. Whipple, Vice-President of Wiggin, that the Renault cars could not go anywhere unless the clerks were guaranteed five days' pay, and that Dalton told Whipple that the Local had "killed the Pope and Talbot deal and we are going to kill this," and that Dalton instructed McIntyre and Hurley, former and present business agents of Local 926, not to let their men remove the Renault cars under the new procedure unless Dalton gave them the O. K.

15. There likewise was evidence presented which affords petitioner a reasonable basis to believe that Callinan insisted that a cumbersome method of individual signatures for each car be used as part of the new procedure, and that this individual signature requirement, plus a requirement of a great deal of walking from the point of rest to a shack where the "bookman" was located, coupled with a very detailed inspection of the cars which the clerks had not made under the old procedure, resulted in only 11 cars being processed in the first hour of the new procedure as against a processing of at least 40 cars under the old procedure.

16. There likewise was evidence which affords petitioner reasonable grounds to believe that Callinan and Dalton, and the clerks acting pursuant to their directions, so slowed down the delivery of the cargo of the S.S. Virie on the 28th of June that only some 90 cars out of the total cargo of 519 were moved to the storage area before representatives of Renault felt compelled to abandon the new procedure and remove the remaining cars to Hingham by use of University-Overland carriers.

17. Petitioner on the evidence submitted has reasonable grounds to believe that since on or about June 27, 1961 Local 1066 has been engaged in a dispute with Renault and that at no time material to this case have respondents been engaged in any labor dispute with either Bay State or Wiggin.

18. The evidence adduced at the trial affords the petitioner reasonable grounds to believe that since June 28, 1961, respondents have ordered, instructed, requested and appealed to the employees of Bay State to cease working or performing services for Bay State, as a result of which employees of Bay State have refused to work or perform services for their employer.

19. By the conduct described in paragraphs 15 and 18, respondents have engaged in, and have induced and encouraged employees of Bay State to engage in strikes or refusals in the course of their employment to use, process, transport, or otherwise handle goods, articles, materials or commodities or to perform services.

20. Petitioner has reasonable cause to believe that the objects of the acts and conduct of respondents set forth in paragraphs 18 and 19 were and are to force or require Bay State, Wiggin, and other persons, to cease using, handling, transporting, or otherwise dealing in the products of, and to cease doing business with Renault, and that these acts and conduct have a close and substantial relation to commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce.

21. It may fairly be anticipated that unless enjoined respondents will continue the acts and conduct described in paragraphs 15, 18, 19, and 20.

22. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10($l$)

of the Act is empowered to grant injunctive relief.

23. There is, and petitioner has reasonable cause to believe that:

(a) Respondent Local 1066 is a labor organization within the meaning of Sections 2(5), 8(b) and 10($l$) of the Act.

(b) Respondents Dalton and Callinan are agents of Local 1066 within the meaning of Sections 2(13), 8(b), and 10($l$) of the Act.

(c) Renault is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(d) Bay State and Wiggin are engaged in commerce or in an industry affecting commerce.

(e) Respondents have engaged in unfair labor practices within the meaning of Section 8(b)(4)(i), subparagraph (B) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

24. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that pending the final disposition of the matters herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition of the acts and conduct set forth in paragraphs 15, 18, 19, and 20 above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.

Respondents' motion to dismiss is denied.

The petition for a temporary injunction is allowed.